IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STEPHANIE D. JONES        .                                              PLAINTIFF

        V.              Civil No. 2:20-cv-02127-PKH-MEF

KILOLO KIJAKAZI[1], Acting Commissioner,
Social Security Administration                                           DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Stephanie Jones ("Jones"), brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.    Procedural Background

Plaintiff filed her applications for DIB and SSI on January 24, 2018, alleging disability since November 7, 2015, due to post-traumatic stress disorder, flashbacks, anxiety attacks, bipolar disorder, general depression, borderline personality disorder, and difficulty breathing.  (ECF No., 14-3, pp. 22, 37, 54, 71; ECF No. 14-5, pp. 2-15; ECF No. 14-6, pp. 6, 49-50, 68-69).   An administrative hearing was held on August 15, 2019.  (ECF No 14-2, pp. 29-56).  Plaintiff was

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

present and represented by counsel.  At the hearing, Plaintiff amended her alleged onset date to April 17, 2018.

Born in 1973, Plaintiff was 42 years of age on her alleged onset date and possessed a high school education with two years of college credits in accounting.  (*Id*. at 21; ECF No. 14-7, p. 62).  She had past relevant work ("PRW") as a server, retail cashier/stocker, and telemarketer.  (*Id*.; ECF No. 14-6, pp. 7-8, 17-23, 41-48).

On October 30, 2019, the ALJ found Plaintiff's bipolar, anxiety, and post-traumatic stress ("PTSD") disorders to be severe impairments.  (ECF No. 14-2, p. 14).  However, he concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Further, he concluded Plaintiff remained able to perform a full range of work at all exertional levels, involving only simple tasks and instructions and incidental contact with the public.  (*Id*. at 16).  With the assistance of a vocational expert, the ALJ determined the Plaintiff could perform work as a sweeper cleaner and laundry laborer.  (*Id*. at 22).

On June 19, 2020, the Appeals Council denied review.  (ECF No. 14-2 at 2-5).  Plaintiff subsequently filed her Complaint with this Court.  (ECF No. 2).  Both parties have filed appeal briefs (ECF Nos. 17, 18), and the case is ready for Report and Recommendation.

## II.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Biestek Berryhill*, 139 S.Ct. 1148, 1154 (2019).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v.*

*Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of her residual

functional capacity if the final stage of the analysis is reached.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.    Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ's RFC determination is supported by substantial evidence, and (2) whether the ALJ's step five determination is supported by the record.  After a thorough review of the record and arguments posited in the parties' appeal briefs, the undersigned shares the Plaintiff's concern that the RFC determination does not accurately account for her mental limitations.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §§ 404.1545, 416.945.  A disability claimant has the burden of establishing her RFC.  *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff has a long history of treatment for bipolar disorder, generalized anxiety, and PTSD.  Records indicate that she received both psychotherapy and medication management

4

through Western Arkansas Counseling and Guidance Center ("WACGC") and was ultimately prescribed a combination of Risperidone, Lithium, Buspirone, and Trazodone.

From November 24-28, 2015, Plaintiff was hospitalized at Valley Behavioral Health due to depression and suicidal ideations with a plan. (ECF No. 14-7, pp. 53-59). She had recently lost her job, boyfriend, and home, leaving her with no income and nowhere to go. Plaintiff reported a depressed mood with symptoms to include crying spells, anxiety, poor concentration, social isolation, poor memory, nightmares, flashbacks, impulsive behaviors, increased activity, difficulty completing tasks, difficulty keeping jobs, and suicidal thoughts. She experienced anxiety attacks in crowds and social situations. Further she detailed ongoing tensions with her parents as her mother had custody of her 14-year-old son. Plaintiff was diagnosed with bipolar disorder-depressed; PTSD; generalized anxiety disorder; alcohol abuse; cannabis abuse; nicotine dependence; a personal history of psychological abuse; a history of physical and attempted sexual abuse; and borderline personality disorder. She was started on Lithium, Risperdal, Vistaril, and Trazodone. She interacted well with both staff and her peers, and her mood, thoughts, and distractibility significantly improved during her stay.

Dr. Robert Spray conducted a Mental Diagnostic Evaluation and Intellectual Assessment on November 17, 2016. (ECF No. 14-7, pp. 61-68). Plaintiff reported an anxious mood, sometimes feeling it in her throat, obsessions about "what-ifs," episodes of energy when she would go out and get drunk, and periods of euphoria. Although she denied unprovoked anger, Plaintiff admitted a history of violence, daily flashbacks with no identifiable triggers, and alcohol and cannabis abuse. On exam, she was very anxious and tense with a labile affect, logical but circumstantial thoughts, normal speech, and a full-scale IQ of 103. However, due to quite variable subtest scores, her full-scale score was not believed to be a good representation of her overall

functioning.  Dr. Spray diagnosed generalized anxiety disorder, PTSD, borderline personality disorder with antisocial features, panic disorder assumed under the PTSD diagnosis, and cannabis use disorder in early remission.  Dr. Spray opined that Plaintiff could communicate and interact in a socially adequate manner, cope with the typical mental/cognitive demands of basic school or work-like tasks, attend and sustain concentration on basic tasks, persist well, and perform at a normal pace.  Dr. Spray indicated that her diagnoses resulted in marked limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and moderate limitations in her ability to make judgments on simple work-related decisions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting.

On May 15, 2018, Dr. Jerry Henderson, a non-examining consultant, completed a Mental RFC assessment.  (ECF No. 14-3, pp. 28-29, 30-32, 43, 45-47).  After diagnosing depressive and bipolar disorders, he noted moderate limitations in the following areas: carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in work setting; setting realistic goals; and making plans independently of others.  This assessment was affirmed by Dr. Abesie Kelly on June 27, 2018.  (ECF No. 14-3, pp. 61-66, 79-83).

In July 2018, Plaintiff experienced a major meltdown while completing her online application for government services.   (ECF No. 14-8, pp. 83-86, 90-93).   Although the Buspirone and Melatonin were somewhat beneficial, she had continued difficulty with sleep disturbances, flashbacks, and nightmares.   Advanced Practical Nurse ("APN") James Gattis, at WACGC, noted that her mood was mainly anxious and somewhat depressed.   He increased her Risperidone and continued her other medications.

On September 5, 2019, at the ALJ's request, Dr.   Patricia Walz examined the Plaintiff. (ECF No. 14-8, pp. 103-110).   At this time, Plaintiff described depressive episodes without mania, anxiety attacks at work, tightness in her throat and chest, difficulty breathing, crying spells, missing work due her anxiety, and tremors in her hands.   Plaintiff also reported a history of being fired due to her incompetence and inability to get along with others.   During the exam, Plaintiff trembled and tapped her leg, her mood and affect were anxious, and she counted on her fingers. Dr. Walz diagnosed bipolar II disorder, panic disorder, and cannabis use disorder in sustained remission (3 years).   She noted that Plaintiff's social skills were impaired by anxiety and panic. Additionally, Plaintiff exhibited impaired attention and concentration, frequently lost her train of thought, had difficulty completing complex tasks, and exhibited slow speed of information processing.   Accordingly, Dr. Walz assessed moderate limitations in the following areas: carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with the public, supervisors, and co-workers; and responding appropriately to usual work situations and changes in a routine work setting.

Despite this evidence and an acknowledgement that the assessments of Drs. Henderson, Kelly, and Walz were persuasive and supportive of his RFC determination, the ALJ failed to either account for these limitations in the RFC or provide an explanation for his rejection of these

limitations.  We do note that Plaintiff continued to work on a part-time basis, working approximately 20 hours over the course of four days per week.  However, we are also cognizant of the statement submitted by her supervisor, Ryan Edward, opining that her anxiety and depression negatively affected her ability to work in following ways: she experienced daily crying spells during which time she retreated to the restroom for a period of time; she was unable to work more than 20 hours per week without experiencing significant anxiety; she became emotionally unstable when working around loud noises, such as crying children, a radio in the kitchen, and speakerphones; she got into altercations with customers; she overreacted to stressful situations; and she had to leave work if she got off schedule.  (ECF No. 14-6, pp. 108-110).  He also indicated Plaintiff had received warnings from management concerning her job performance.  Although the government contends that the ALJ was not required to adopt Ryan's statement, the regulations require the ALJ to "carefully consider any other information you may submit about your symptoms," including statements "other persons provide about your pain or other symptoms."  20 C.F.R. § 404.1529(c)(3).  Given the fact that her employer had no interest in Plaintiff's receipt of benefits and the absence of evidence to contradict his statement, we find that the ALJ's failure to discuss this statement was error.  *Willcockson v. Astrue*, 540 F.3d 878, 880-881 (8th Cir. 2008) (when coupled with other errors, ALJ's failure to consider witness testimony was contrary to the governing regulations).

The government argues Plaintiff can show no prejudice in the ALJ's failure to include the additional limitations in the RFC because the Dictionary of Occupational Titles ("DOT") indicates the positions the ALJ concluded Plaintiff could perform do not require significant "people" interaction.  *See* DOT §§ 389.683-010, 1991 WL 673279 (sweeper cleaner); 361.687-018, 1991 WL 672992 (laundry laborer).  Under the category of taking instructions and helping, the DOT

does indicate that the requirement for these positions is "not significant." However, it does not indicate exactly how much interaction with co-workers and supervisors is required. Because all the physicians, including those who merely reviewed the record, concluded Plaintiff would have trouble accepting instructions, responding appropriately to criticism from supervisors, and interacting with co-workers and supervisors, we cannot say an individual with these limitations could perform the positions identified by the ALJ. This would require verification by a vocational expert.

Additionally, we note that the sweeper-cleaner position involves exposure to loud noises and the laundry laborer position involves exposure to moderate noise. Based on the statement of Plaintiff's employer, it appears her PTSD caused her to experience extreme anxiety when subjected to loud noises. Nightmares and flashbacks were also documented by her health care providers, indicating her PTSD was both active and subject to triggers. As such, we believe additional information is required concerning Plaintiff's ability to work near moderate to loud noises.

Accordingly, the undersigned finds that remand is necessary to allow the ALJ to reconsider Plaintiff's RFC. On remand, the ALJ should also ask APN James Gattis to complete a Medical Source Statement to help determine Plaintiff's ability to perform work-related activities on a full-time basis. Special attention should be paid to Plaintiff's ability to accept instructions and criticism from supervisors, work with and around co-workers and supervisors, and work near moderate to loud noises.

The ALJ is reminded that the evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical

disability, do not compel a finding that disability based on a mental disorder has ceased.  *Id.*; *Mabrv v. Colvin*, 815 F.3d 386, 392 (8th Cir. 2016).  Mental illness can be extremely difficult to predict with remissions being of uncertain duration and marked by the possibility of relapse.  *Andler*, 100 F.3d at 1393.  Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may be more impaired than their symptoms indicate.  *See Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001); *see also Maestri v. Colvin*, No. 2:15-CV-2125-PKH-MEF, 2016 WL 4523890, at *3 (W.D. Ark. Aug. 8, 2016), report and recommendation adopted, No. 2:15-CV-2125, 2016 WL 4523899 (W.D. Ark. Aug. 29, 2016).

## IV.    Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of August 2021.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE